Barbara A. Rohr (SBN 273353)
Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: brohr@faruqilaw.com
          bheikali@faruqilaw.com

Bonner Walsh (OSB No.131716) *(pro hac vice forthcoming)*
**WALSH PLLC**
PO Box 7
Bly, Oregon 97622
Telephone:  (541) 359-2827
Facsimile:  (866) 503-8206
Email:  bonner@walshpllc.com

Michael Fuller (OSB No. 09357) *(pro hac vice forthcoming)*
**OLSEN DAINES PC**
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
Email: michael@underdoglawyer.com
Telephone: (503) 201-4570

*Attorneys for Plaintiff Tanya Mack*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA MACK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LLR, INC. and LULAROE, LLC<br><br>Defendants. | Case No.:  5:17-cv-00853<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of California Civil Code §1750, *et seq.***<br><br>2. **Violation of California Business and Professions Code § 17200, *et seq.***<br><br>3. **Violation of California Business and Professions Code § 17500, *et seq.***<br><br>4. **Breach of Implied Warranty**<br><br>5. **Breach of Express Warranty**<br><br>6. **Common Law Fraud**<br><br>7. **Quasi-Contract/Unjust Enrichment/Restitution**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Tanya Mack ("Plaintiff") by and through her counsel, brings this Class Action Complaint against LLR, Inc. and LuLaRoe, LLC ("Defendants"), on behalf of herself and all others similarly situated, and alleges upon personal knowledge as to her own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this consumer protection class action lawsuit against Defendants, based on Defendants' unlawful business practices with respect to the marketing, advertisement, and sale of LuLaRoe defective leggings (the "Products").

2.     At all relevant times, Defendants have marketed, advertised, and sold the Products as leggings for regular and athletic use. The Products however, are defective and unfit for normal or athletic use because they arrive with holes or tears, and/or rip, tear, or develop holes after limited use.

3.     Plaintiff and other consumers have reasonably relied on Defendants to provide Products free of defect and fit for ordinary use, and reasonably believed at the time of purchase that the Products would be free of defect and fit for ordinary use. To their dismay, Plaintiff and other consumers have received sub-par defective leggings that tear, rip, or develop holes after limited use.

4.     Had Plaintiff and other consumers known that the Products were defective, they would not have purchased the Products, would have purchased less of them, or would have paid significantly less for them.  Therefore, Plaintiff and other consumers have suffered injury in fact as a result of Defendants' unlawful practices.

5.     At all relevant times, Defendants were aware, or should have been aware, that the Products are defective and not fit for ordinary use. Consumers across the country have submitted complaints to the Federal Trade Commission ("FTC") and the Better Business Bureau ("BBB"), and have posted complaints on social media platforms, including but not limited to Facebook and Twitter.

1

**CLASS ACTION COMPLAINT**

6.     Plaintiff brings this class action lawsuit on behalf of herself and all others similarly situated.   Plaintiff seeks to represent a Nationwide Class and a California Consumer Subclass (defined *infra* in paragraphs 69-70) (collectively, referred to as "Classes").

7.     Plaintiff, on behalf of herself and the Classes, is seeking damages, restitution, declaratory and injunctive relief, and all other remedies this court deems appropriate.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total thousands of class members, and are citizens of states different from the states of Defendants.

9.     Furthermore, jurisdiction is proper in this Court under the doctrine of supplemental jurisdiction for the other California claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants they have sufficient minimum contacts in California or otherwise intentionally did avail themselves of the markets within California, through their sale of the Products to California consumers.

11.     Venue is proper in this District pursuant to 28 U.S.C. 1391(a)(1) because Defendants regularly conduct business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## PARTIES

12.     Plaintiff Tanya Mack is a citizen of California, residing in Wildomar, Riverside County. Between approximately May 2016 and March 2017, Ms. Mack purchased the Products in Wildomar, CA and Murrieta, CA. In purchasing each of the

2

**CLASS ACTION COMPLAINT**

Products, Ms. Mack relied on Defendants to provide Products free of defect and fit for ordinary use, and reasonably believed at the time of purchase that the Products would be free of defect and fit for ordinary use.  However, the Products Ms. Mack purchased either arrived with holes, or developed holes within her first use of them. Furthermore, some of the Products she purchased were mis-sized. Ms. Mack would not have purchased the Products, would have purchased less of them, or would have paid significantly less for them had she known that they were defective.  Ms. Mack therefore suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein. Ms. Mack would like to purchase the Products in the future but will not know whether they are defective or not because she purchases them online and cannot see or inspect them at the point of sale.

13.    Defendant LLR, Inc. is a Wyoming corporation with its principal place of business in Thayne, Wyoming. Defendant LLR, Inc. is responsible for the marketing, distribution, and sale of the Products in the United States, including in this District.

14.    Defendant LuLaRoe, LLC is a California limited liability company with its principal place of business in Corona, CA.  Defendant LuLaRoe, LLC is responsible for the marketing, distribution, and sale of the Products in the United States, including in this District.

## FACTUAL ALLEGATIONS

### A.    Defendants' Business Model

15.    Founded in 2012, Defendants operate the LuLaRoe brand as a direct sales multi-level marketing ("MLM") business that designs and manufactures clothing, including leggings, for customers across the United States.

16.    Through its MLM business model, Defendants foregoes selling LuLaRoe clothing directly to consumers, and instead sells the clothing at wholesale

**CLASS ACTION COMPLAINT**

to recruited members of the general public, known as "Fashion Consultants" or "Fashion Retailers," who in turn sell the clothing directly to consumers through in-home and online boutiques.[1]

17.   To date, Defendants have approximately 80,000 independent Fashion Consultants selling LuLaRoe clothing to consumers across the country. Reports have indicated that Defendants' sales have exploded to approximately $1 billion as of 2016.

18.   To get on board, Fashion Consultants purchase bundles of clothing from Defendants (the "Onboarding Packages") — clothing bundles that cost the Fashion Consultants between $5,000 and $9,000. Due to the steep costs of these Onboarding Packages, Defendants are incentivized to focus their business model on recruiting more Fashion Consultants and selling more Onboarding Packages, rather than catering to the voices of the consumers they do not sell directly to.

19.   Because the Fashion Consultants deal directly with the purchasing consumers, Defendants have also tasked the Fashion Consultants with management of customer service, including managing customer complaints, returns, and exchanges.

20.   When customers complain directly to Defendants, they are advised to contact their Fashion Consultants. However, when the Fashion Consultants attempt to reach Defendants to coordinate the return of goods or to obtain credit for their customers, their correspondence goes unanswered by Defendants.

21.   Because of the MLM business model employed by Defendants, Defendants have been able to shift not only the financial risk associated with the business, but also the burden of adequate customer service to the Fashion Consultants.

---

[1] http://www.lularoe.com/shop-lularoe (last visited on May 2, 2017).

4

**CLASS ACTION COMPLAINT**

**B.    The Products**

22.    One of Defendants' highest selling clothing products is their line of LuLaRoe leggings (the "Products").[2]

![Two photographs of models wearing LuLaRoe leggings]

23.    Defendants warrant on their LuLaRoe social media accounts and website that the Products will be fit for ordinary, and even athletic, use, and that the Products will be defect free. For example, the LuLaRoe website says the following regarding

---

[2] http://www.lularoe.com/adult-leggings (last visited on May 2, 2017).

**CLASS ACTION COMPLAINT**

the Products:[3]

    a.  "Our adult Leggings are ultra-stretchy"

    b.  "[W]e've made sure to make our bright Leggings from materials that will last even the longest week of wear."

    c.  "You can sport these print Leggings at your favorite Pilates class or throw on some cute booties and wear them out for a girl's night!"

24.    Furthermore, by selling the Products as "leggings," Defendants impliedly warrant that customers are purchasing a leggings product fit for normal use, including the warranty that the Products will not arrive with tears and holes, and will not develop tears and holes after only a few hours of use. The normal use of leggings does and should not involve tearing and ripping after limited use. Leggings should be suitable for regular wear, daily activity, and covering of the lower body.

25.    Defendants know, knew or should have known that Plaintiff and other consumers did and would rely on them to provide Products that are defect free and fit for ordinary use as leggings.

**C.    The Products are Defective and Not Fit for Ordinary or Athletic Use**

26.    The Products, however, are defective and unfit for normal and athletic use. Customers of the Products across the country have complained that the Products either arrive torn or with holes, and/or develop tears or holes after only a few hours of use.

---

[3] *Id.*

6

**CLASS ACTION COMPLAINT**

27. The following images depict some of the defects with the Products that customers have documented:[4]



@LuLaRoe I put on my new first pair of your black leggings and have 2 holes! Black is hard to come by! #LuLaRoe



.@LuLaRoe My brand new unicorn leggings came with holes. #defective #unhappycustomer #emailmebackplease

28. Furthermore, the Products are defective because they often arrive mis-sized.

29. As described in Paragraph 12, Plaintiff has experienced the defects in the Products first-hand, as the Products she purchased arrived with holes and/or developed holes or tears within a few hours of use. For example, on numerous occasions, Plaintiff received the Products and immediately noticed there were numerous pinholes in them that would lead to tearing or ripping almost immediately. Once Plaintiff reviewed the return policy and saw that she was unable to return the defective product she threw them away:

---

[4]
https://twitter.com/corimarino/status/818506129626042369/photo/1?ref_src=twsrc%5Etfw&ref_url=http%3A%2F%2Fwww.self.com%2Fstory%2Flularoe-leggings (last visited on May 2, 2017);
https://twitter.com/laurens450/status/712086880515461120 (lasted visited on May 2, 2017).

**CLASS ACTION COMPLAINT**



30.   Furthermore, Plaintiff has purchased Products that were mis-sized.

**D.   Defendants were, or should have been, aware that the Products are defective**

31.   Defendants know, knew or should have known that the Products were defective and not fit for ordinary use.

32.   Defendants have acknowledged the defects in the Products and have admitted that they intentionally manufacture inferior leggings products. Patrick Winget, designer and head of production for the LuLaRoe clothing line, reportedly admitted in a January 17, 2017 company-wide email that, "[t]he leggings may get holes, because we weaken the fibers to make them buttery soft." In a company-wide webinar meeting that same day, Mr. Winget admitted that "[w]e're still getting emails

**CLASS ACTION COMPLAINT**

and concerns about holes."[5]

33.     Furthermore, in addition to customer complaints received directly by Defendants on a daily basis, customers have taken to numerous platforms to express their concerns with the Product.

34.     For example, consumers have created a Facebook Group called "LuLaRoe Defective/Ripped/Torn Leggings and Clothes," a forum with over 27,000 members. Members use the forum to express their outrage about the Products.

35.     Furthermore, numerous consumers have filed complaints about the Products with the FTC[6]:

     a.     "I purchased a $25 pair of leggings from a LuLaRoe consultant online. As soon as I tried to put them on, the fabric tore. The fabric is thin, shotty and cheaply made. You can poke the fabric gently and they tear instantly. They are full of holes, ruined and not wearable. I contacted the company via email and they have not replied. I have been unable to return or exchange them."

     b.     "I have purchased 5 different pairs of the TC leggings from this company and ALL 5 have had holes in them while wearing them for the first time in a matter of hours. Poor quality of these products and the only outcome is to replace. I don't want to replace a poor quality item with another poor quality item."

     c.     "I have had four pairs of leggings in total rip. The first pair had tiny pin holes throughout the thigh area. The second ripped while putting them on. The third tore two identical holes below the butt cheeks, this was the first time I wore them and I pretty much rode in the car all day.

---

[5] http://www.businessinsider.com/lularoe-admits-leggings-are-tearing-holes-2017-3 (last visited on May 2, 2017).
[6] https://www.truthinadvertising.org/wp-content/uploads/2017/03/LLR-FTC-complaints.pdf (last visited May 2, 2017).

**CLASS ACTION COMPLAINT**

1    The fourth ripped along the seam."

2    36.    Numerous customers have also taken their concerns to the Better

3    Business Bureau, which has given LuLaRoe an "F" rating:[7]

4         a. "For a 26.50 pair of leggings they were very disappointing and ripped

5            after one wear. Was told I can not return worn items for a refund!"

6         b. "I have purchased several items from Lularoe, I now have holes in

7            leggings, varied sizing even though they all say 'one size' pilling of

8            fabric after one wear, missing stitching."

9         c. "Nothing like buying a pair of leggings that you spend 25.00 ...To wear

10           one time to either find holes in the material or you end up with your butt

11           cheek showing due to poor quality...Never again."

12   **E.    Plaintiff and other Consumers of the Product were Harmed**

13   37.    Plaintiff and other consumers have reasonably relied on Defendants to

14   provide Products free of defect and fit for ordinary use, and reasonably believed at

15   the time of purchase that the Products would be free of defect and fit for ordinary use.

16   38.    Plaintiff and other consumers did not know, and had no reason to know,

17   that the Products are defective Defendants did not disclose to Plaintiff and other

18   consumers that the Products would be defective and not fit for ordinary use.

19   39.    Because the Products are defective and not fit for ordinary use,

20   Defendants' marketing and sale of the Products was and continues to be unlawful.

21   40.    Plaintiff and other consumers have paid an unlawful premium for the

22   Products.  Plaintiff and other consumers would not have purchased the Products at

23   all, or would have purchased less of them had they known that the Products were

24   defective. In the alternative, Plaintiff and other consumers would have paid

25   significantly less for the Products had they known that the Products are defective.

26   Therefore, Plaintiff and other consumers purchasing the Products suffered injury in

27
28   [7] https://www.bbb.org/central-california-inland-empire/business-reviews/online-retailer/lularoe-in-corona-ca-89069765/reviews-and-complaints (last visited May 2, 2017).

10

**CLASS ACTION COMPLAINT**

1  fact and lost money as a result of Defendants' unlawful, unfair, and fraudulent

2  practices, as described herein.

3        41.    As a result of its misleading business practices, and the harm caused to

4  Plaintiff and other consumers, Defendants should be enjoined from selling the

5  Products.  Furthermore, Defendants should be required to pay for all damages caused

6  to harmed consumers, including Plaintiff.

7        42.    Despite being harmed by Defendants, Plaintiff would like to purchase

8  the Products in the future but will not know whether they are defective or not because

9  she purchases them online and cannot see or inspect them at the point of sale.

10  **F.    Defendants' Poor Return/Refund Policy During the Class Period**

11        43.    Prior to April 24, 2017, customers were barred from returning or

12  exchanging LuLaRoe products to Defendants directly.    Defendant's website

13  confirmed this policy: "any request pertaining to returns, damages, or shipping should

14  go to the original Retailer you purchased from. THANK YOU."

15        44.    Under this policy, when a customer attempted to return a defective

16  product for a refund or an exchange directly from Defendants, he or she was either

17  ignored or instructed to contact the Fashion Consultant from whom he or she

18  purchased the product. It was the Fashion Consultants' responsibility to contact

19  Defendants to return the defective product. However, Fashion Consultants have

20  reported that coordinating a return/exchange of a defective product with Defendants

21  is not an easy task, as their correspondence and requests almost always go

22  unanswered by Defendants.  Therefore, based on Defendants' return policies, Fashion

23  Consultants often do not provide refunds and/or exchanges for defective products.

24        45.    To the extent that a Fashion Consultant allows an exchange, the

25  customer often does not receive the exact same product that he or she purchased.  Part

26  of Defendants' business model, which enables them to mark up the price of its

27  Products, is to limit the number of each product that they sell. Furthermore, the

28

**CLASS ACTION COMPLAINT**

1 customer is responsible for any shipping costs associated with the return/exchange.

2     46.    Moreover, Fashion Consultants would typically only exchange unworn,

3 unwashed products with tags still attached, thus precluding a return of a worn product

4 that developed a hole immediately.

5 **G.    Defendants' Recently Instituted Refund and Warranty Program is**

6       **Inadequate**

7     47.    In an attempt to alleviate their unlawful practices regarding the Products,

8 and only in response to numerous defective product lawsuits, in April 2017,

9 Defendants implemented a limited warranty and refund program.

10     48.    Defendants' "Make Good Program" seeks to remedy Product defect

11 issues for past customer purchases, while the "Limited Warranty" and "Happiness

12 Program" (collectively with the "Make Good Program" referred to as the

13 "Programs") seek to protect future customer purchases.

14     49.    Although these Programs claim to provide a return and refund policy to

15 Defendants' customers, the Programs contain many of the same issues as the previous

16 policy and are limited in a number of ways:

17 **The Happiness Policy**

18     50.    The Happiness Policy is Defendants new return, refund, credit, and

19 exchange policy for products purchased on or after April 24, 2017 .  They have

20 detailed this policy on their website as follows[8]:

21

22         **Our Return, Refund, Credit and Exchange Policies are Simple:**

23         •    If at any time during the first **30 days** you are not

24         completely satisfied or happy with your purchase**,** please

25         contact the Independent Fashion Retailer **who sold you the**

26         **product** and provide your original purchase receipt to receive a **full refund, credit or \*exchange**.

27

28 [8] http://www.lularoe.com/happinesspolicy (last visited May 2, 2017).

**CLASS ACTION COMPLAINT**

- If at any time in the **first 90 days** you are not completely satisfied or happy with your purchase, please contact **any** Independent Fashion Retailer and provide your original purchase receipt to receive a **credit or *exchange**.
- Our policy applies to all unaltered LuLaRoe products sold to retail consumers in the United States by an authorized LuLaRoe Independent Fashion Retailer and excludes non-apparel and promotional items not sold at retail.
- If your product has a manufacturing defect in materials or workmanship, you may be entitled to a return under our limited warranty. Please see our limited warranty for details.
- *Due to the limited and exclusive nature of LuLaRoe's prints, colors, art and graphics, we cannot guarantee you will receive the same print, color, art or graphics in exchange.*

51.   Defendants still direct customers to contact Fashion Consultants, instead of Defendants, for a refund, credit or exchange. Thus, the burden of going through a middle-man for a refund, credit, or exchange still exists.

52.   As noted in the policy, Defendants still cannot guarantee exchanges for the exact same product because they still manufacture and distribute limited amounts of each product style and/or color.

53.   Defendants' policy only applies to unaltered products, which they do not define.

**The Limited Warranty:**

54.   The Programs also include a Limited Warranty for returns due to manufacturing defect in materials or workmanship for products purchased after April 24, 2017.  It allows for a return for a period of six months after the date of purchase with proof of purchase subject to certain limitations.[9]

---

[9] http://www.lularoe.com/limitedwarranty (last visited May 2, 2017).

**CLASS ACTION COMPLAINT**

55.      However, the Limited Warranty hinges on Defendants' sole discretion: "If at LuLaRoe's sole discretion your product is found to be defective after it is returned for inspection to an Independent Fashion Retailer…." The limited warranty "does not cover damage caused by accident, improper care, negligence, abuse, ***normal wear and tear***, and the natural breakdown of colors and materials that occur by extended use." (emphasis added)[10]

56.      According to the Limited Warranty FAQ, "Fabric wearing thin, showing abrasions, stains, fading, discoloration, ***rips, or tears*** may be considered normal wear and tear."[11] (emphasis added). Under such a definition and policy, Defendants can easily refuse returns/exchanges for the   immediate tears and rips in Products, claiming that those issues are the results of "normal wear and tear" or "the natural breakdown of…materials," and thus not covered by the limited warranty.

57.      According to the policy, Defendants still cannot guarantee exchanges for the exact same product because they still manufacture and distribute limited amounts of each product style and/or color.

58.      Defendants' policy only applies to "original, unaltered, and unmodified product[s]," standards which Defendants' do not further define.

59.      Moreover, customers cannot receive a cash refund for the defective product under Defendants' limited warranty.

60.      Defendants continue to direct customers to return their product and proof of purchase to the Fashion Consultant who sold them the product.  The Fashion consultant will process the return and exchange, if Defendants determine that there was a manufacturing defect.

**The MAKE GOOD Program**

61.      "The 'MAKE GOOD Program' entitles Consumers to a product replacement, LuLaRoe Gift Card, or refund for products containing a defect in

---

[10] *Id.*

[11] *Id.*

14

**CLASS ACTION COMPLAINT**

materials or workmanship purchased between January 1, 2016 and April 24, 2017 from an authorized Independent Fashion Retailer."[12]

62.   Most importantly, however, the MAKE GOOD Program does <u>not</u> provide any remedy for purchases of the Products made <u>prior to</u> January 1, 2016.

63.   Like the Limited Warranty Program, the MAKE GOOD Program "does not cover damage caused by accident, improper care, negligence, abuse, normal wear and tear, and the natural breakdown of colors and materials that occurs by extended use."[13]

64.   Likewise, the MAKE GOOD Program hinges on Defendants' sole discretion. Under such a policy, Defendants can easily refuse returns for the defects in the Products described above as being the results of normal wear and tear or the natural breakdown of materials and thus not covered under the program.

65.   Also, Defendants still cannot guarantee exchanges for the exact same product because they still manufacture and distribute limited amounts of each product style/color.

66.   Defendants continue to direct customers to return their product and proof of purchase to the Fashion Consultant who sold them the product.  The Fashion consultant will process the return and exchange or refund, if Defendants find that the product was defective.

67.   Despite Defendants' recent implementation of these three Programs Defendants have done little to alert consumers to these available programs. Customers using Defendants' website are not put on conspicuous notice of the recall program but rather have to click on the word "Happiness," in order to be directed to the Program policies. Customers also must navigate through several pages in order to find any of the offers.

---

[12] http://www.lularoe.com/happiness (last visited May 2, 2017).
[13] http://www.lularoe.com/makegood (last visited May 2, 2017).

**CLASS ACTION COMPLAINT**

68.     Furthermore, there is no guarantee that Defendants will modify their unlawful practices to ensure that customers are no longer subject to defective leggings product purchases in the future. This is compounded by Mr. Winget's admission in a January 17, 2017 email regarding the Products, that "[w]e have done all we can to fix them."

## **CLASS ACTION ALLEGATIONS**

69.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the United States who purchased the Products within the relevant statute of limitations periods ("Nationwide Class").

70.     Plaintiff also seeks to represent a subclass defined as all persons, who are California residents who purchased the Products, or who purchased the Products within the State of California, for personal, family, or household purposes during the relevant statute of limitations periods ("California Consumer Subclass").

71.     Excluded from the Classes are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.  Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Classes.

72.     Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

73.     Plaintiff is a member of all Classes.

74.     <u>Numerosity</u>:     Through approximately 80,000 Fashion Consultants, Defendants have sold at least thousands of units of the Products.  Accordingly, members of the Classes are so numerous that their individual joinder herein is

**CLASS ACTION COMPLAINT**

impractical.  While the precise number of Class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

75.  <u>Common Questions Predominate</u>:  Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether the Products were defective and whether Defendants concealed material facts regarding the quality of the Products.

76.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Classes she seeks to represent in that Plaintiff and members of the Classes were purchased Defendants' defective Products.

77.  <u>Adequacy</u>:  Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

78.  <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.  The size of each claim is too small to pursue individually and each individual Class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  The class action mechanism is designed to remedy harms like this one that are too small in value, although not insignificant, to file individual lawsuits for.

**CLASS ACTION COMPLAINT**

79.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the Class members, thereby making final injunctive relief appropriate with respect to all Classes.

80.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq*.**
***(for the California Consumer Subclass)***
***(Injunctive Relief Only)***

81.     Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants.

83.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

84.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing and selling the Products as leggings, and stating that the Products are made "from materials that will last even the longest week of wear," Defendants have represented and continue to represent that the Products have characteristics – that they will be fit for ordinary use – when they do not

18

**CLASS ACTION COMPLAINT**

have such characteristics.  Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

85.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing and selling the Products as leggings, and stating that the Products are made "from materials that will last even the longest week of wear," Defendants have represented and continue to represent that the Products are of a particular standard or quality – defect free and fit for ordinary use – when they are not of such standard or quality. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

86.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By marketing and selling the Products as leggings, and stating that the Products are made "from materials that will last even the longest week of wear," but then selling the Products with defects, Defendants have violated section 1770(a)(9) of the CLRA.

87.     Cal. Civ. Code  § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By marketing and selling the Products as leggings, and stating that the Products are made "from materials that will last even the longest week of wear," but then selling the Products with defects, Defendants have violated section 1770(a)(16) of the CLRA

88.     At all relevant times, Defendants have known or reasonably should have known that the Products were defective and not fit for ordinary use, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on Defendants and their expertise in design and manufacturing to provide Products free of defect and fit for ordinary use.

89.     Plaintiff and other members of the California Consumer Subclass

19

**CLASS ACTION COMPLAINT**

reasonably and justifiably relied on Defendants and their expertise in design and manufacturing to provide Products free of defect and fit for ordinary use.

90.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendants because they would not have purchased the Products, would have purchased less of them, or would have paid significantly less for the Products had they known that Defendants' conduct was unlawful and fraudulent.

91.     Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Consumer Subclass are seeking injunctive relief pursuant to the CLRA, preventing Defendants from further wrongful acts and unfair and unlawful business practices, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

92.     Pursuant to Cal. Civ. Code § 1782, on April 28, 2017, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendants. Defendants received the notice and demand letter on May 1, 2017.[14] If Defendants failed to fully rectify or remedy the damages caused within the statutorily required 30 day period, Plaintiff will amend this Class Action Complaint to also seek damages under the CLRA.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, _et seq._**
**(_for the California Consumer Subclass_)**

93.     Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants.

95.     UCL §17200 provides, in pertinent part, that "unfair competition shall

---

[14] _See_ Exhibit A.

20

**CLASS ACTION COMPLAINT**

mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

96.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

97.    Defendants' manufacturing and sale of the Products therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

98.    As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiff, and members of the California Consumer Subclass.

99.    Under the UCL, a business act or practice is "unfair" if the Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

100.    Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is unfair, unlawful, and is injurious to consumers who seek to purchase a leggings product free of defect.  Selling a defective product is of no benefit to consumers.  Therefore, Defendants' conduct was and continues to be "unfair."

101.    As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiff, and members of the California Consumer Subclass.

102.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

103.    Defendants' conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products would be fit for ordinary use and defect free, when they are not.  Because Defendants misled Plaintiff

**CLASS ACTION COMPLAINT**

and members of the California Consumer Subclass, Defendants' conduct was "fraudulent."

104.  As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiff, and members of the California Consumer Subclass.

105.  Plaintiff requests that this Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of the California Consumer Subclass, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff, and members of the California Consumer Subclass, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### THIRD CLAIM FOR RELIEF
#### Violation of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq*
##### *(for the California Consumer Subclass)*

106.  Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

107.  Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants.

108.  California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

109.  Defendants have represented and continue to represent to the public,

**CLASS ACTION COMPLAINT**

including Plaintiff and members of the California Consumer Subclass, through Defendants' website that the Products are made "from materials that will last even the longest week of wear." Furthermore, by selling the Products as "leggings," Defendants have represented that the Products would be leggings fit for ordinary use and not defective with holes and/or tears. Defendants' representations are misleading because the Products are defective and not fit for ordinary use. Ordinary use of leggings does not involve dealing with embarrassing tears and holes. Because Defendants have disseminated misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendants violated the FAL.

110. As a result of Defendants' false advertising, Defendants have and continue to fraudulently obtain money from Plaintiff and members of the California Consumer Subclass.

111. Plaintiff requests that this Court cause Defendants to restore this fraudulently obtained money to Plaintiff and members of the California Consumer Subclass, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### California Commercial Code § 2314
*(for the California Consumer Subclass)*

112. Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

113. Plaintiff brings this claim individually and on behalf of the members of

23

**CLASS ACTION COMPLAINT**

1  the proposed California Consumer Subclass against Defendants.

2      114.   California Commercial Code § 2314(1) provides that "a warranty that

3  the goods shall be merchantable is implied in a contract for their sale if the seller is a

4  merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).

5      115.   California Commercial Code § 2314(2) provides that "[g]oods to be

6  merchantable must be at least such as… (c) Are fit for the ordinary purpose for which

7  such goods are used." Cal. Com. Code § 2314(2)(c).

8      116.   Defendants are merchants with respect to the sale of clothing products,

9  including the Products here.  Therefore, a warranty of merchantability is implied in

10  every contract for sale of the Products to Plaintiff and California consumers.

11      117.   By selling the Products, Defendants made a promise that the Products

12  are fit for their ordinary purpose as leggings.  By providing defective Products,

13  Defendants have failed to provide Products fit for their ordinary purpose. Ordinary

14  use of leggings does not involve dealing with embarrassing tears and holes.  Plaintiff

15  and California consumers did not receive the goods as impliedly warranted by

16  Defendants to be merchantable.

17      118.   Therefore, the Products are not merchantable under California law and

18  Defendants have breached their implied warranty of merchantability in regard to the

19  Products.

20      119.   If Plaintiff and members of the California Consumer Subclass had

21  known that the Products were defective, they would not have purchased the Products,

22  would have purchased less of them, or would not have been willing to pay as much

23  for them.  Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff

24  and members of the California Consumer Subclass have suffered injury and deserve

25  to recover all damages afforded under the law.

26

27

28

**CLASS ACTION COMPLAINT**

### FOURTH CLAIM FOR RELIEF
#### Breach of Express Warranty
#### California Commercial Code § 2313
*(for the California Consumer Subclass)*

120.   Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

121.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants.

122.   California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Cal. Com. Code § 2313.

123.   Defendants have expressly warranted through their website and other advertising platforms, including their social media accounts, that the Products are fit for their ordinary use as leggings. These representations about the Products: (1) are affirmations of fact or promises made by Defendants to consumers that the Products are defect free (2) became part of the basis of the bargain to purchase the Products; and (3) created an express warranty that the Products would conform to these affirmations of fact or promises.  In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

124.   Plaintiff and members of the California Consumer Subclass reasonably and justifiably relied on the foregoing express warranties, believing that that the Products would in fact conform to these warranties.

125.   Defendants have breached the express warranties by manufacturing and

**CLASS ACTION COMPLAINT**

1  selling the Products with defects.

2      126.   Plaintiff and members of the California Consumer Subclass have been

3  harmed. If Plaintiff and members of the California Consumer Subclass had known of

4  the true nature of the Products, they would not have purchased the Products, would

5  have purchased less of them, or would not have been willing to pay the price

6  associated with Products.

7      127.   As a result, Plaintiff and members of the California Consumer Subclass

8  suffered injury and deserve to recover all damages afforded under the law.

9                    **SIXTH CLAIM FOR RELIEF**
                     **Common Law Fraud**
10                   ***(for the Classes)***

11     128.   Plaintiff repeats the allegations contained in paragraphs 1-48 above as if

12  fully set forth herein.

13     129.   Plaintiff brings this claim individually and on behalf of the members of

14  the Classes against Defendants.

15     130.   Defendants have marketed the Products in a manner indicating that the

16  Products were defect free and fit for ordinary use. Furthermore, Defendants have

17  willfully, falsely, or knowingly concealed and suppressed the material fact that the

18  Products were defective and not fit for ordinary use. The Products, however, are

19  defective contrary to Defendants' representations and omissions. Therefore,

20  Defendants have made misrepresentations regarding the Products.

21     131.   Defendants' misrepresentations are and were material (i.e., the type of

22  misrepresentations to which a reasonable person would attach importance and would

23  be induced to act thereon in making purchase decisions), because they relate to where

24  the quality of the Products.

25     132.   Defendants knew or recklessly disregarded the fact that the Products

26  were defective.

27     133.   Defendants intended and continue to intend that Plaintiff and other

28

                              26
                    **CLASS ACTION COMPLAINT**

consumers rely on their expertise in providing quality leggings products, in purchasing the Products.

134.   Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants to provide defect free Products and had the correct facts been known, would not have purchased the Products, would have purchased less of them, or would not have purchased them at the prices at which they were offered.

135.   Therefore, as a direct and proximate result of Defendants' fraud, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
### (*for the Classes*)

136.   Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

137.   Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

138.   As alleged herein, Plaintiff and members of the Classes have reasonably relied on Defendants to provide defect free Products but have not received all of the benefits promised by Defendants.   Plaintiff and members of the Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Classes.

139.   The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

140.   Therefore, it is inequitable and unjust for Defendants to retain the profit,

**CLASS ACTION COMPLAINT**

benefit, or compensation conferred upon them without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

141. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a) For an order certifying the Nationwide Class and the California Consumer Subclass, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of all Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

b) For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c) For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

d) For an order awarding damages on behalf of the Classes, in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For interest on the amount of any and all economic losses, at the prevailing legal rate;

g) For an order of restitution and all other forms of equitable monetary relief;

h) For injunctive relief as pleaded or as the Court may deem proper;

**CLASS ACTION COMPLAINT**

1    i)   For an order awarding Plaintiff and all Classes their reasonable

2   attorneys' fees, expenses and costs of suit, including as provided by statute such as

3   under California Code of Civil Procedure section 1021.5; and

4    j)   For any other such relief as the Court deems just and proper.

5   **DEMAND FOR TRIAL BY JURY**

6   Plaintiff demands a trial by jury on all issues so triable.

7

8   Dated: May 2, 2017                **FARUQI & FARUQI, LLP**

9

10                                    By: */s/ Barbara A. Rohr*
                                      Barbara A. Rohr, Bar No. 273353
11                                    Benjamin Heikali, Bar No. 307466
                                      10866 Wilshire Blvd., Suite 1470
12                                    Los Angeles, CA 90024
                                      Telephone: 424.256.2884
13                                    Fax: 424.256.2885
                                      E-mail: brohr@faruqilaw.com
14                                                bheikali@faruqilaw.com

15                                    Bonner Walsh (OSB No.131716)
                                      *(pro hac vice forthcoming)*
16                                    **WALSH PLLC**
                                      PO Box 7
17                                    Bly, Oregon 97622
                                      Telephone:  (541) 359-2827
18                                    Facsimile:  (866) 503-8206
                                      Email:  bonner@walshpllc.com

19                                    Michael Fuller (OSB No. 09357)
                                      *(pro hac vice forthcoming)*
20                                    **OLSEN DAINES PC**
                                      US Bancorp Tower
21                                    111 SW 5th Ave., Suite 3150
                                      Portland, Oregon 97204
22                                    Email: michael@underdoglawyer.com
                                      Telephone: (503) 201-4570
23

24                                    *Counsel for Tanya Mack*

25

26

27

28
                                          29
                            **CLASS ACTION COMPLAINT**

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Tanya Mack, declare as follows:

1.     I am the Plaintiff in this action and a citizen of the State of California. To extent the allegations in the complaint are based on my personal knowledge, they are true and, if called as a witness, I could testify competently thereto.

2.     This Class Action Complaint is filed in the proper place for trial because I purchased the Products in this District, and Defendant conducts a substantial amount of business in this District.

3.     Between May 2016 and March 2017, I purchased the Products from in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on April 30, 2017 at Los Angeles, California.

_____

Tanya Mack