

388 Market Street, Suite 1300
San Francisco, CA 94111
T: (415) 373-1671
F: (415) 484-1294
www.zlk.com

Rosemary M. Rivas
rrivas@zlk.com

October 20, 2020

**VIA ECF**
Honorable Shashi H. Kewalramani
George E. Brown, Jr. Federal Building and United States Courthouse
3470 12th St.
Riverside, CA 92501

    Re:    *Tanya Mack, et al. v. LLR, Inc., et al.*, Case No. 5:17-cv-00853-JGB(SHKx)

Dear Honorable Kewalramani:

    Following the Pre-Motion Conference and the Court's Order of October 15, 2020, Plaintiffs provide this letter brief seeking an order from the Court that compels Defendants to allow Plaintiffs to inspect, and if their consultants/experts deem necessary, to remove limited portions of fabric (5"x5") from no more than 50 pairs of leggings out of approximately 8,000 pairs that were returned as defective by proposed class members. Plaintiffs also respectfully request that the Court deny Defendants' request to be present and record Plaintiffs' consultants/experts' inspection, including the removal of fabric and any related testing.

**I.**    **Factual Background**

    In response to Plaintiffs' Document Request No. 48, Defendants agreed to produce for inspection leggings in their possession, custody or control that were returned to them by consumers and fashion consultants pursuant to return programs. From sometime in April 2017 until just about a few months ago, these leggings were in the possession, custody and control of Defendants' manufacturer of the leggings, MyDyer. In other words, although the lawsuit was already filed and pending in March 2017, Defendants allowed MyDyer, a third-party, to receive and take control of the leggings and inspect them without the presence of Plaintiffs.[1]

    Moreover, after the lawsuit was filed in March 2017, MyDyer has conducted and/or commissioned a number of different types of tests on LuLaRoe leggings, including strength tests. Defendants will likely argue that this testing shows that the leggings were not defective. Although such testing was purportedly performed in the ordinary course of business, the testing was conducted after the lawsuit was filed and nevertheless performed without the presence of Plaintiffs. Nor was the testing recorded.

---

[1] Internal emails exchanged between Defendants and MyDyer and produced in this case indicate that MyDyer inspected the leggings.

## II. Defendants' Attempts to Observe and Record Plaintiffs' Work Product Should Be Rejected

"The decision whether to allow testing, including destructive testing, falls within the sound discretion of the court." *Synbias Pharma v. Solux Corp.*, 2013 WL 12095236, at *2 (S.D. Cal. June 5, 2013) (quoting *Holmes v. J.M. Products, Inc.*, 2005 WL 927172, at *3 (W.D. Tenn. Jan. 07, 2005)). "If the parties differ as to whether an inspection or test is appropriate, 'the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.'" *Id.* (quoting *Scruggs v. Inter'l Paper Co.*, 278 F.R.D. 698, 700 (S.D. Ga. Jan. 12, 2012)).

Courts consider various factors in evaluating requests for destructive testing. *See, e.g.*, *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611 (D. Md. 2006). The factors include: 1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial. *Id.* at 614. Defendants agree that Plaintiffs are allowed to remove a 5"X5" square of fabric for testing and only claim that they should be allowed to observe and record Plaintiffs' inspection and testing. Defendants' request should be denied.[2]

### A. Defendants Will Suffer No Prejudice

As an initial matter, the testing Plaintiffs request is not "destructive" in the traditional sense. *See Hunley v. Glencore Ltd, Inc.*, 2013 WL 1681836, at *3 (E.D. Tenn., April 17, 2013) ("Destructive testing is testing that destroys or irreversibly alters evidence" and "in which an object central to the case would be wholly consumed or destroyed."). Rather, Plaintiffs intend to remove only limited pieces of fabric from each pair of leggings, largely leaving the leggings intact. Nothing about Plaintiffs' proposed inspection and testing will prevent Defendants from conducting testing on the same leggings or presenting the leggings as evidence at trial. Moreover, since Plaintiffs only seek to remove a 5"x5" square from no more than 50 pairs of leggings, Defendants will be left with thousands of other pairs of leggings to test or present to the jury if they so desire. Thus, Defendants' ability to present evidence at trial will not be hindered.

Moreover, there are no other alternative methods of obtaining testing of leggings that proposed class members returned as defective from the time period in question (2016-2017).

---

[2] The parties exchanged draft testing protocols over the course of approximately three months. Defendants never took position that testing was not relevant or unnecessary. When the parties wrote to Your Honor on October 9, 2020 about the instant dispute, Defendants for the first time took the position that testing was unnecessary. During the Pre-Motion Conference, however, Defendants seemed to abandon that argument and agreed that testing was appropriate as long as they are allowed to observe and record. Thus, the first *Home Depot* factor is not at issue.

While Plaintiffs are able to test their own leggings, Defendants will likely argue that Plaintiffs' leggings are not a representative sample.[3]

The dispute in *RevoLaze LLC v. J.C. Penney Corp., Inc.*, 2020 WL 1984322 (E.D. Tex. Apr. 27, 2020) is analogous to the facts here. In *RevoLaze*, the testing required removal of a small sample from jeans. *Id.* at *1. The plaintiff had 95 pairs of jeans in its possession and had already performed testing on 62 of them. *Id.* The defendant wanted to conduct its own testing, and plaintiff refused unless its technical expert was allowed to observe and record all testing. *Id.* The court stated that many of the destructive testing cases that the parties cited concerned testing in which there would be no physical product left for the non-movant's desired use. *Id.* at *3. The court determined that allowing the defendant to conduct the testing <u>without</u> the supervision of the plaintiff would best aid the search for truth. *Id.* Similarly, in *Synbias*, 2013 WL 12095236, the court refused to allow the opposing party to observe its adversary's testing and stated that "[i]t is of note that the documents will not be wholly destroyed and that sufficient ink will remain on the documents to permit Synbias to conduct its own examination. *Id.* at *4.

Defendants here have not been able to articulate any possible prejudice caused by Plaintiffs' proposed inspection and testing if they deem it necessary. Instead, under the guise of "transparency," Defendants seek to get a sneak-peak at otherwise privileged work product. As the Court indicated, Defendants will have an opportunity to depose Plaintiffs' testifying expert, conduct their own testing and compare and contrast their expert's results with Plaintiffs' results, and will also be able to move to exclude Plaintiffs' expert at the appropriate time if they so choose. Accordingly, adequate safeguards are in place to minimize any potential prejudice. For the reasons set forth above, each of the *Home Depot* factors weighs heavily in Plaintiffs' favor.

### B. Defendants' Presence During Testing Would Destroy Plaintiffs' Privilege

Defendants have testing which Plaintiffs were not allowed to observe or record and most likely have conducted testing that they will never have to share with Plaintiffs unless they deem it favorable to them. Nevertheless, they seek to deny Plaintiffs the exact same privilege. Allowing Defendants to look over Plaintiffs' expert's shoulder while working would be obtrusive and would make it impossible to protect the testing as work product. *See Shoemaker v. Gen. Motors Corp.*, 154 F.R.D. 235, 236 (W.D. Mo. 1994). In *Shoemaker*, the plaintiffs claimed they were entitled to be present during any litigation testing performed by the defendant. *Id.* The court rejected the plaintiffs' argument on the basis of work product and attorney-client privilege. The court reasoned, "[t]he decision of what to test and how is essentially a working-out of the defendant's interpretation of facts and testing of its defenses. Those processes involve either the attorney's mental processes or the opinions of consulting experts. Both are protected." *Id.* The court recognized that "experts may be expected to testify or they may be retained for consultation only. Insofar as those experts are expected to testify at trial, their opinions and the facts on which those opinions are based are certainly discoverable . . ..

---

[3]Defendants have insisted that any testing as to Plaintiffs' leggings must be observed and recorded by Defendants although they took the opposite position for the first time at the October 15, 2020 hearing.

Page 4 of 4
October 20, 2020

However, information about the facts known and opinions held by consulting experts is protected . . . and should be disclosed only on a showing of 'exceptional circumstances.'" *Id*. If Plaintiffs' test results are offered as evidence at trial, Rule 26 controls. However, if Plaintiffs elect not to submit the tests results as evidence at trial, any testing conducted is protected as work product. Accordingly, Defendants should not be permitted to observe Plaintiffs' testing at this juncture.

      For the reasons set forth above, Plaintiffs respectfully request that the Court compel Defendants to allow Plaintiffs to analyze and remove limited pieces of fabric from no more than 50 pairs of leggings and that the Court deny Defendants' request to observe and record Plaintiffs' analysis.

      Sincerely,

      *Rosemary Rivas*

      Rosemary M. Rivas