Alejandro S. Angulo (State Bar No. 217823)
aangulo@rutan.com
Bradley A. Chapin (State Bar No. 232885)
bchapin@rutan.com
Kathryn D.Z. Domin (State Bar No. 274771)
kdomin@rutan.com
Samantha Goates (State Bar No. 310610)
sgoates@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone:   714-641-5100
Facsimile:   714-546-9035

Attorneys for Defendants
LULAROE, LLC and LLR, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(EASTERN DIVISION)

| | |
|---|---|
| TANYA MACK; SUZANNE JONES; CAITLIN GOODWIN; MINA NICOLLE ULASZEK BENJAMIN; TERRI DORAN; and EMMA HEINICHEN on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LULAROE, LLC and LLR, INC.,<br><br>Defendants. | Case No. 5:17-cv-00853-JGB(SHKx)<br><br>Consolidated With:<br>    2:17-cv-07252-JBG(AFMx)<br>    2:17-cv-07259-JGB(Ex)<br>    2:17-cv-07308-JGB(AFMx)<br>    2:17-cv-07310-JGB(Ex)<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>THE HONORABLE JESUS G. BERNAL<br><br>**LULAROE, LLC AND LLR, INC.'S OPPOSITION TO EMMA HEINICHEN'S MOTION FOR VOLUNTARY DISMISSAL**<br><br>Date:        January 11, 2021<br>Time:       9:00 AM<br>Location:   Courtroom 1<br><br>Date Action Filed:  May 2, 2017<br>Trial Date:      March 3, 2020 |

Rutan & Tucker, LLP
*attorneys at law*

2814/033910-0005
15911235.5 a12/21/20

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................................................................2

    A.   Summary Of The Facts Alleged In The Operative Complaint As To Ms. Heinichen ..........................................2

    B.   LuLaRoe's Efforts To Depose Ms. Heinichen ...................................3

    C.   Plaintiffs' Counsel Proposes Dismissing Ms. Heinichen ....................4

    D.   Ms. Heinichen's Deposition Testimony ............................................6

III.    LEGAL STANDARD ..............................................................................11

IV.     THE MOTION SHOULD BE DENIED ..................................................12

V.      REGARDLESS, ANY DISMISSAL SHOULD BE ON PROPER TERMS ...................................................................................................14

    A.   LuLaRoe Should Be Permitted To Conduct Limited Discovery Pertaining To Ms. Heinichen's Failure To Preserve Her Leggings .............................................................15

    B.   LuLaRoe Should Be Permitted To Reopen Ms. Heinichen's Deposition To Fully Explore The Factual Inaccuracies Alleged In Her Complaint ....................................16

    C.   Ms. Heinichen Should Be Required To Testify At Trial If Necessary For LuLaRoe's Defense ...........................................17

VI.     CONCLUSION ........................................................................................18

Rutan & Tucker, LLP
*attorneys at law*

2814/033910-0005
15911235.5 a12/21/20

-i-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*40235 Washington Street Corp. v. Lusardi*,
   1999 WL 33633157 (S.D. Cal. 1999) ....................................................... 12

*A. Farber & Partners, Inc. v. Garber*,
   234 F.R.D. 186 (C.D. Cal. 2006) ............................................................. 13

*Apple Inc. v. Samsung Elecs. Co. Ltd*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ..................................................... 12

*Chavez v. Dunlop, Ltd.*,
   2011 WL 1641972 (E.D. Tex. April. 13, 2011) ....................................... 12

*Dysthe v. Basic Research, LLC*,
   273 F.R.D. 625 (C.D.Cal.2011) ......................................................... 14, 16

*Estate of Blue v. Cty. of Los Angeles*,
   120 F.3d 982 (9th Cir. 1997) ............................................................. 16, 17

*Polaris PowerLED Techs., LLC v. VIZIO, Inc.*,
   2019 WL8138437 (C.D. Cal. Aug. 29, 2019) ........................................... 17

*Sherman v Yahoo! Inc.*,
   2015 WL 473270 (S.D. Cal. Feb. 5, 2015.) ......................................... 14, 15

*Silvestri v. General Motors Corp.*
   271 F3d 583 (4th Cir. 2001) ................................................................... 12

*Soderstet v. CBIZ, Inc.*,
   2009 WL 10674436 (C.D. Cal. July 10, 2009) ........................................ 11

*Stevedoring Servs. of Am. v. Armilla Int'l B.V.*,
   889 F (9th Cir. 1989) ............................................................................. 11

*UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ............................................. 12, 13

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
   982 F.2d 363 (9th Cir. 1992) ................................................................... 13

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-ii-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

**Page(s)**

**FEDERAL CASES (CONT.)**

*United States v. Kitsap Physicians Serv.,*
    314 F.3d 995 (9th Cir. 2002) ................................................................. 12

*Zubulake v. UBS Warburg LLC,*
    229 F.R.D. 422 (S.D.N.Y. 2004) ........................................................... 13

**CALIFORNIA STATUTES**

Business & Professions Code
    section 17200 *et seq.* ............................................................................... 3

**FEDERAL RULES**

Federal Rules of Civil Procedure
    rule 11 ............................................................................................... 16, 17
    rule 11(b) ................................................................................................. 16
    rule 11(c) ................................................................................................. 16
    rule 41(a)(2) ............................................................................................ 11
    rule 45(c)(1)(A) ...................................................................................... 18

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-iii-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

## I.   INTRODUCTION.

By way of her motion for voluntary dismissal (the "Motion"), plaintiff Emma Heinichen seeks an order to dismiss her from this case.  The Motion, however, does not tell the whole story of the events leading up to Ms. Heinichen's request for a dismissal.  Indeed, the Motion omits, perhaps inadvertently, material facts regarding (a) Ms. Heinichen's failure to preserve evidence—namely her leggings at issue, which are now missing; (b) the falsity of certain material allegations in her complaint; (c) her refusal to appear for deposition last year when it was scheduled by agreement of the parties; and (d) her recent appearance at deposition, which she insisted on limiting to two hours.  Because the Motion fails to address these key facts, the Motion also omits that LuLaRoe, LLC and LLR, Inc. ("LuLaRoe") did not discover Ms. Heinichen's failure to preserve evidence and the falsity of her allegations until Ms. Heinichen finally appeared for her deposition in October 2020—approximately a year and a half after her deposition was originally noticed.  More specifically, and until recently, LuLaRoe did not know, and Ms. Heinichen did previously share with LuLaRoe that she was never advised to preserve relevant evidence, that she lost—and thus failed to preserve—her leggings, that the basic facts alleged in her complaint about the leggings she purchased are demonstrably false, and that she suspects she is being used as a "pawn" by a "bunch of attorneys" who are "trying to make money."

Ms. Heinichen has been litigating her case for over two years.  While LuLaRoe appreciates that she now wants out, her dismissal is not appropriate under the circumstances she proposes.  But even if her dismissal were proper, the terms under which she wants to be dismissed do nothing to address the prejudice she caused to LuLaRoe by failing to preserve relevant evidence.  The law is clear:  where a plaintiff seeks a voluntarily dismissal (like Ms. Heinichen), the Court can—and should—deny that request where legal prejudice exists to the defendant or, at a minimum, the requested dismissal should be conditioned on just and proper

Rutan & Tucker, LLP
*attorneys at law*

2814/033910-0005
15911235.5 a12/21/20

-1-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

terms to address the legal prejudice.

As explained below, LuLaRoe is presumed to have suffered legal prejudice as a result of Ms. Heinichen's failure to preserve her leggings. For this reason alone the Motion should be denied. If, however, the Court is inclined to grant the Motion, it should do so on just and proper terms. Specifically, Ms. Heinichen's dismissal should be conditioned on all or some of the following: (a) LuLaRoe should be permitted to conduct limited discovery pertaining to Ms. Heinichen's failure to preserve her leggings (including third-party depositions of persons to whom she allegedly may have provided the leggings); (b) LuLaRoe should be permitted to reopen Ms. Heinichen's deposition; and (c) Ms. Heinichen should be required to testify at trial if necessary to LuLaRoe's defense given that she resides outside of this Court's subpoena power.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.

### A.   Summary Of The Facts Alleged In The Operative Complaint As To Ms. Heinichen.

The First Amended Consolidated Class Action Complaint (the "Complaint"), was filed on September 14, 2018, by Ms. Heinichen, along with plaintiffs Tanya Mack, Suzanne Jones, Caitlin Goodwin, Mina Nicolle Ulaszek Benjamin, and Terri Doran (collectively, "Plaintiffs"). (ECF Dkt. No. 79 ("Complaint").) LLR, Inc. and LuLaRoe, LLC are named as defendants and Ms. Heinichen purports to represent the "California Subclass" consisting of "[a]ll individuals residing in California who purchased for personal, family or household use, LuLaRoe branded leggings." *Id.* (Complaint, ¶ 98(b)).

As to Ms. Heinichen, the Complaint alleges the following, among other facts:

➢ She "purchased [her] leggings . . . in 2017. . ." (Complaint, ¶ 40);

➢ She "saw images of the leggings during Facebook 'pop-up' sales . . . ." (Complaint, ¶ 40); and

➢ She "relied on the images of the [Leggings] she saw on Facebook" in

making her decision to purchase leggings (Complaint, ¶ 40).

Ms. Heinichen alleges the following claims:  (1) Unfair Business Practices under California Business & Professions Code § 17200 *et seq.* (Count I); (2) Unlawful Business Practices under California Business & Professions Code § 17200 *et seq.* (Count II); (3) Violation of the California Consumer Legal Remedies Act (Count III); (4) Breach of Implied Warranty of Merchantability (Count VI); and (5) Unjust Enrichment (Count VII).  Among other things, Ms. Heinichen seeks unspecified injunctive relief, (*see* Complaint, ¶¶ 115, 121 &129), and prays for "reasonable attorneys' fees and experts' fees," (*see* Complaint, p. 37:12–13).

### B.     LuLaRoe's Efforts To Depose Ms. Heinichen.

On April 5, 2019, LuLaRoe noticed Ms. Heinichen's deposition for May 15, 2019.  Angulo Decl., ¶ 2, Ex. A.  Thereafter, the parties agreed to reschedule Ms. Heinichen's deposition to be conducted in San Francisco on July 19, 2019.  Angulo Decl., ¶ 3, Ex. B.  This date was agreed to because LuLaRoe's counsel—who is located in Orange County, California, was already scheduled to proceed with the deposition of another plaintiff (Suzanne Jones) in San Francisco the day before, July 18, 2019.  *Ibid*.  LuLaRoe issued an amended deposition notice reflecting this rescheduling agreement.  Angulo Decl., ¶ 4, Ex. C.

On July 16, 2019—just three days before her scheduled deposition—Ms. Heinichen sought to reschedule her deposition because, according to her, she was involved in a trial in her capacity as a paralegal through her law firm employer.  Angulo Decl., ¶ 5, Ex. D.  On that same date, LuLaRoe responded as follows to this last-minute rescheduling request:

> We are amenable to rescheduling Ms. Heinichen's deposition on the condition that pays the added expense of the rescheduling or alternatively, if she agrees to have the deposition proceed on another date (in the near future) in our office in Orange County. With the current back-to-back deposition schedule, Ms. Goates and I only need to fly up once to San Francisco to depose both Ms. Jones and Ms. Heinichen (on Thursday and Friday, respectively). If Ms. Goates and I have to fly up a second time because of a rescheduling (which will be

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-3-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

the result of what you are requesting), then my client will have to incur the additional attorney travel time and additional travel expenses (airplane ticket, hotel, meals, etc.) in connection with going to San Francisco twice (as opposed to once). We do not believe that is fair, particularly since this deposition on calendar for some time and Ms. Heinichen has had notice of her workload (i.e., the existence of a trial).

Indeed, we selected the dates you proposed for these depositions on back-to-back dates to avoid duplicative expenses.

Let me know if Ms. Heinichen is agreeable to paying for the additional expenses *or* having the deposition proceed in Orange County in the near future. If so, we are happy to reschedule.  If not, then we intend to proceed on Friday.

*Id*. LuLaRoe did not receive a response to this email.

On July 17, 2019, LuLaRoe's counsel traveled to San Francisco to conduct the depositions of Ms. Jones and Ms. Heinichen.  Angulo Decl., ¶ 6.  During Ms. Jones' deposition on July 18, 2019, counsel advised that Ms. Heinichen would not be appearing for her deposition and further, that LuLaRoe's proposal about rescheduling the deposition was not acceptable.  *Id*.  Ms. Heinichen's deposition did not proceed on July 19, 2019 as previously agreed to by the parties.  *Id.*

**C.      Plaintiffs' Counsel Proposes Dismissing Ms. Heinichen.**

On April 7, 2020, Ms. Heinichen's counsel proposed dismissing Ms. Heinichen without prejudice from this action and sent LuLaRoe a draft stipulation for that dismissal.  Angulo Decl., ¶ 7, Ex. E.  On April 9, 2020, LuLaRoe responded as follows:

Thank you for the email and draft stipulation. At this time, Defendants are not prepared to stipulate to Ms. Heinichen's dismissal, particularly without prejudice as you have proposed.

As an initial matter, we are still expecting Ms. Heinichen to be produced for deposition at our office in Orange County (after the travel restrictions and stay at home orders are lifted).  We incurred considerable expense to travel to Northern California to take her deposition, extending our trip beyond that necessary for Ms. Jones' deposition, only to have her deposition cancelled the day before it was to take place.  That was at least the third time in this case that Plaintiffs have attempted to cancel or reschedule a deposition the day before the deposition was to take place.

> Defendants may be willing to reconsider their position on dismissal after Ms. Heinichen's deposition is complete. Recall that this is the same position we took with Ms. Doran when, on the eve of her deposition, Plaintiffs sought to dismiss her from the case in lieu of her appearing for her deposition. Notably, she remains in the case to this day. We are willing to discuss this with you, but short of Ms. Heinichen appearing for deposition and a dismissal with prejudice, I am not sure we will be able to reach an agreement.

Angulo Decl., ¶ 8, Ex. F.

From April to October 2020, the parties met and conferred about Ms. Heinichen's requested dismissal and the rescheduling of her deposition. Angulo Decl., ¶ 9. The parties exchanged draft stipulations regarding Ms. Heinichen's dismissal, some of which included provisions requiring Ms. Heinichen to attend a deposition. Angulo Decl., ¶ 9, Exs. G & H. Those communications also included a response to Ms. Heinichen's request for information about the expenses that LuLaRoe had incurred traveling to San Francisco for her previously scheduled deposition that the parties had agreed to:

> The efficiency of flying up for two depositions, two lawyers time on the road, and lost time preparing for the deposition that will have to be done all over again because it's now been months. I could go on, but the cost is considerable. In any event, you are correct that we did what we could on our end to mitigate the costs; for example, I did sleep at my brother's home in Oakland as opposed to staying in a hotel in San Francisco where the deposition was scheduled to proceed the day after Mrs. Jones' deposition. We also agree with your implicit observation that failing to mitigate costs would have been unfair.

> In short, because of the cancellation, we lost the savings benefit of conducting the depositions back-to back as we had jointly scheduled and agreed to do. If we have to fly back up, we will incur further costs that could have been avoided in the form of additional flights, hotels, meals, etc. Our expectation is that Ms. Heinichen will be paying these costs if we need to go back to San Francisco for the deposition. We are amenable, however, to having her come down so that these duplicative costs — which are the direct result of Ms. Heinichen's last minute cancellation — can be avoided.

> I look forward to hearing from you once you have spoken to Ms. Heinichen. If not by this week, please let me know when you expect to get back to us.

Angulo Decl., ¶ 10, Ex. I.

On August 28, 2020, LuLaRoe again made efforts to reschedule Ms.

Heinichen's deposition. Angulo Decl., ¶ 11, Ex. J.[1] Thereafter, the parties agreed that Ms. Heinichen's deposition would proceed remotely on October 15, 2020, that the deposition would be limited to two hours, and that the deposition would proceed after work hours to accommodate Ms. Heinichen's work schedule. Angulo Decl., ¶ 12; *id.* at Ex. K; *see also* Ms. Heinichen Depo., p. 72:1-03 ("But I have a little, tiny, small issue with the fact that I truly feel that I was told this would take one to two hours, and now we are at 8:00"). Based on this agreement, LuLaRoe issued an amended notice of deposition for Ms. Heinichen's deposition. Angulo Decl., ¶ 13, Ex. L.

### D. Ms. Heinichen's Deposition Testimony.

Ms. Heinichen's deposition proceeded on October 15, 2020, during which she provided testimony on a variety of topics.

As to her work experience, Ms. Heinichen confirmed that she has approximately six years of experience working in the legal industry as a paralegal at a law firm where her work includes litigation and discovery work. *See* ECF Dkt. 145-1 (Declaration of Rosemary M. Rivas ("Rivas Decl."), ¶ 11, Ex. B ("Ms. Heinichen Depo."), pp. 5:25-6:12; 13:7-14:6).

Ms. Heinichen confirmed that she had lost her leggings at issue and that she would not be able to locate them:

> Q. [D]o you still have any of them [the Leggings]?
> A. I may have the dress. The dress was like the one thing that I actually wore and liked and like worked out, but not – I'm not a hundred percent sure if I still have that. To be honest with you, I'm not sure if I have any of it. Like I just don't know. If you want details on that, I will give them to you.

Ms. Heinichen Depo., p. 41:8-14.

> Q. Okay, In relation to the four leggings that we've been discussing, the two with the holes and the other two, as you sit here right now, do you have

[1] In that communication, LuLaRoe also raised issues regarding Ms. Heinichen's proposed stipulation for a voluntary dismissal and indicated that it would not be opposed to a voluntary dismissal subject to Ms. Heinichen providing an explanation for her decision to abandon her case. *Id.*

any idea where they could be?
A.    No.
Q.    Do you think that they could be lost?
Ms. Mah:    Objection; asked and answered.
A.    "I don't know where they are " means they're lost, doesn't it?

Ms. Heinichen Depo., pp. 85:25-86:8.

Ms. Heinichen also confirmed that she had not prepared for her deposition, that she was not aware that she had been asked her to produce her leggings to LuLaRoe, that she had never been instructed to preserve relevant evidence, and that she had never produced her leggings to her counsel:

Q.    Have you done anything to prepare for your deposition today?
A.    No.

Ms. Heinichen Depo., p. 8:20-22.

*        *        *

Q.    Do you understand that in this case you've been asked to produce all four of those leggings?
A.    I don't understand that.

Ms. Heinichen Depo., p. 87:2-4.

*        *        *

Q.    Have you heard the term "spoliation"?
A.    Probably.  I can't recall.
Q.    Do you know what that means?
A.    I can imagine what it means.  Destroying or like letting – letting ruin or something.
Q.    Okay.  Is it fair to say that no one has instructed you to preserve evidence in this case?
Ms. Mah:    Objection; calls for attorney-client privilege. If you can answer without revealing attorney-client providence, you can answer.
A.    I honestly don't recall – I don't recall ever being instructed on that.
Q.    Okay.
A.    I mean, as a matter of a fact, I know I've never been instructed on that.

Ms. Heinichen Depo., p. 15:8-24.

*        *        *

Q.    Have you looked for the leggings anytime within

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-7-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

the last year?

A. No.

Q. Do you recall ever leaving the leggings with your – with any of the class attorneys?

A. I did not.

Q. You did not leave it with them.

A. Absolutely did not, no.

Ms. Heinichen Depo., p. 42:8-25.

Ms. Heinichen also explained how she became involved as a named plaintiff and why she no longer wants to participate in this case:

Q. Okay. What do you understand your role to be as a class representative?

A. I – I mean, just piecing it together right now in realtime, I think it probably means like that I'm somebody who gave my account so that it could actually be put into the complaint, whereas like probably the rest of the class is like people who like responded to a postcard or something that they got, you know. And so their like specific details won't be included in the actual litigation, whereas mine will.

Ms. Heinichen Depo., p. 22:14-23.

*     *     *

Q. At some point, you decided that you no longer wanted to be a class representative or a plaintiff in this action; is that correct?

A. Yes.

Q. When did you decide that?

A. When I started to feel harassed about this deposition.

Q. What do you mean?

A. The initial deposition –

Ms. Mah:   Objection; calls for attorney-client privilege. I instruct you not to answer that question, Emma.

A. I will say that I'm talking about the other attorneys harassing me, but . . .

Ms. Mah:   I just want to make sure you're not revealing any sort of attorney-client communications since I wasn't involved in the discussions.

A. Okay. So are you saying I shouldn't answer this?

Ms. Mah:   Yes, I instruct you not to answer.

Q. I am going to interject really quick. If there's anything that you're going to be communicating that's not based on communications with your attorney, you can answer to that extent,

A. It's just all so silly. It's – I just, you know, we're like three, four years after – like I don't even know

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-8-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

when I bought – like I can look at the doc production and see –what's the – 2016 is when I bought these leggings.  Like it's been four years.

Like I don't – again, I told you I decided to participate – like it's not – how much money did I spend on these leggings, a hundred dollars or $200 or something like that.  At this stage in my life, like this chunk of my time is worth so much more than that, you know.

And I feel that what really made me get a bad taste in my mouth was, you know, my deposition was noticed however long ago, a million years ago.  And I gave like seven days' notice that I needed to reschedule it.  And I was met with like threats that horrible things would happen to me in response to that and I would have to go to L.A. on my own dime and all this stuff.

And – anyway, so it just really – it just offended me and started to make me realize that I was – I felt like I was just being used as a pawn by a bunch of attorneys who were trying to make money.  And that's how I felt.

Because I work – and I'm sorry to get upset, but I work in this field.  And to be given seven days' notice that somebody wants to reschedule a deposition is totally acceptable.  And to be met with people telling me that I had like done something wrong really upset me.  It made me feel like I just wanted nothing to do with any of this anymore.[2]

Ms. Heinichen Depo., pp. 32:13–34:23.

When asked how she became a plaintiff in this action, Ms. Heinichen also testified about how she came to purchase her leggings and confirmed that she never attended a shopping event (i.e., "pop-up sale") through Facebook or any other social media platform:

A.   Okay.  So I had a friend who was like a LuLaRoe dealer or rep or whatever they call them, a consultant.  And she was always trying to get me to come look at her stuff and buy something.  So eventually, I did, more so just because I felt like I wanted to stop being hounded about it.

Ms. Heinichen Depo., pp. 16:12-17.

Q.   Did you ever try to become a fashion consultant?

[2]   Ms. Heinichen went on to confirm that she had never received communications from LuLaRoe threatening her.  Ms. Heinichen Depo., pp. 35:25–36:4.

A.   No. No way.
Q.   Okay.  What about with Kristen?  Did you attend any of her    LuLaRoe –
A.   No way, Jose.  I never would.  None of that stuff appealed to me at all.
Q.   Okay.  Did you ever attend a Facebook LuLaRoe –
A.   No.
Q.   -- event?
A.   No.  No way.  Sorry.  I interrupted you.  I heard your whole  question.  I never attended a Facebook event or any sort of virtual event.

Ms. Heinichen Depo., p. 37:12-25.

Finally, Ms. Heinichen provided testimony inconsistent with the some of the important allegations in the Complaint:

| Allegations In Ms. Heinichen's Complaint | Facts Testified To At Deposition |
| --- | --- |
| Ms. Heinichen "purchased leggings made by Defendants in 2017 . . . ." Complaint, ¶ 38. | Q.  Are these the leggings that you purchased from Kristen McKenna?<br>A.  Yes.<br>Q.  Okay.  And the date on the receipt is December 31, 2016?<br>A.  Yes, I see that.<br><br>Ms. Heinichen Depo., p. 53:12-14. |
| Ms. Heinichen "saw images of the leggings during Facebook 'pop-up' sales . . . .'" Complaint, ¶ 40. | Q.  Did you ever attend a LuLaRoe party?<br>A.  No.  No way.<br>Q.  Okay.  What about Kristen?  Did you attend any of her LuLaRoe –<br>A.  No way, Jose.  I never would.  None of that stuff appealed to me at all.<br>Q.  Okay.  Did you ever attend a Facebook LuLaRoe –<br>A.  No.<br>Q.  -- event?<br>A.  No.  No way.  Sorry.  I interrupted you.  I heard your whole question.  I never attended     a Facebook event or any sort of virtual event.<br><br>Ms. Heinichen Depo., p. 37:14-25. |

| | |
|---|---|
| Ms. Heinichen "relied on the images of the [Leggings] she saw on Facebook, the fact that they were by LuLaRoe, and the fact that they appeared to be new and in good condition allowed her to reasonably believe they were suitable for ordinary use—the images gave her no reason to believe the Products were in fact defective and would arrive with and/or develop holes and rips shortly after using them." Complaint, ¶ 40. | Q.    So how was it that you came to make any LuLaRoe purchases?<br>Ms. Mah:    Objection; asked and answered.<br>A.    I actively try not to succumb to being marketed at.  So when I see stuff like that on Facebook and whatnot, I like avoid it at all costs.<br><br>But at the time, my friend was either pregnant or with a little baby.  I can't quite remember her situation.  And she was kind of just trying to like have a little income.  And she kept asking me over and over, and it was sort of like this elephant in the room.  And I kind of just wanted to like get it over with and just buy the stuff so she would stop asking me.<br><br>So I went over to her house one day, which I probably would have done anyway, you know, just to hang out.  And she had like all her loot.  And we just went through it, just she and I.  And I tried a few things on and bought a few things.<br><br>Ms. Heinichen Depo., p. 38:1-13. |

## III.    LEGAL STANDARD.

Under Rule 41(a)(2), a request for dismissal may only be granted "by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2). "A motion for voluntary dismissal under Rule 41(a)(2) is addressed to the district court's sound discretion and the court's order will not be disturbed unless the court has abused its discretion." *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F,2d 919, 921 (9th Cir. 1989).

"A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Soderstet v. CBIZ, Inc.*, 2009 WL 10674436, at *1  (C.D. Cal.

July 10, 2009).  "In defining this standard, the Ninth Circuit has stated that 'legal prejudice is just that—prejudice to some legal interest, some legal claim, some legal argument.'"  *40235 Washington Street Corp. v. Lusardi*, 1999 WL 33633157, at *2 (S.D. Cal. 1999) (quoting *Westlands Water Dist. v. United States* (9th Cir. 1996) 100 F.3d 94, 96).  "If the court finds that a motion for voluntary dismissal will cause legal prejudice, then the court may deny the motion or impose conditions that will cure the prejudice."  *Chavez v. Dunlop, Ltd.*, 2011 WL 1641972, at *3 (E.D. Tex. April. 13, 2011).

## IV.   <u>THE MOTION SHOULD BE DENIED.</u>

Here, legal prejudice is presumed because neither Ms. Heinichen nor her counsel preserved the leggings that Ms. Heinichen purchased and that are the subject of her claims.  "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it."  *Apple Inc. v. Samsung Elecs. Co. Ltd*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (internal quotations omitted) (quoting *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06–3359 JF, 2009 WL 1949124, at *10 (N.D.Cal. July 2, 2009)).  Courts have held that "sometimes even the inadvertent, albeit negligent, loss of evidence" results in unfairness because the destroying party would otherwise benefit from the lost evidence whereas the defendant will be denied the ability to defend against claims. *Silvestri v. General Motors Corp.* (4th Cir. 2001) 271 F3d 583, 593.

At a minimum, Ms. Heinichen's leggings should have been preserved *prior to the filing of her lawsuit.*  A duty to preserve evidence arises when a litigant is placed on "some notice that the evidence was potentially relevant to the litigation."  *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002).  "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."  *UMG Recordings, Inc. v. Hummer Winblad Venture Partners* (*In re Napster, Inc. Copyright Litig.*), 462 F.

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-12-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

Supp. 2d 1060, 1067 (N.D. Cal. 2006). Therefore, this duty may arise even before the commencement of litigation. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 193 (C.D. Cal. 2006) ("There is no doubt that a litigant has a duty to preserve evidence it knows or should know is relevant to imminent litigation."). This preservation duty extends to counsel, who is required to actively monitor a client's preservation of evidence: "In short, it is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).

"If a party breaches its duty to preserve evidence, the opposing party may move the court to sanction the party destroying evidence." *Napster*, 462 F. Supp. 2d at 1066. District courts may "impose sanctions as part of their inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.*, quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (excluding evidence as a sanction for spoliation).

Ms. Heinichen's leggings are, without a doubt, integral to Ms. Heinichen's claims, including all allegations in the Complaint. It thus follows that the leggings are equally critical to LuLaRoe's defense. Ms. Heinichen's duty to preserve evidence—including her counsel's corresponding duty to monitor the preservation of evidence—arose when she decided to sue LuLaRoe and certainly no later than when she filed her lawsuit. *See* Ms. Heinichen Depo., pp. 16:25-17-3 (". . . I went online and looked it up and found the law firm that was representing the class, and they happened to be located like across the street from my office."); *id.* at p. 42:14-15 ("I probably brought them to the initial meeting and showed them to the class attorneys.").

At deposition, when asked whether her attorneys instructed her to preserve

evidence, Ms. Heinichen testified: "I mean, as a matter of fact, I know I've never been instructed on that." Ms. Heinichen Depo., p. 15:23-24. Ms. Heinichen also confirmed that she lost the leggings. *See id.* at p. 86:7-8 ("'I don't know where they are' means they're lost, doesn't it?"; *id.* at p. 88:6-9 ("I believe that what I've said deems them as lost. I – they're not in my drawer where I keep clothing. So if they're not there, that means they are somewhere where I don't have access to them anymore.").

Of course, until deposing Ms. Heinichen, LuLaRoe did not know —and was never told—that Ms. Heinichen lost her leggings and that she was never instructed to preserve her leggings. Controlling law establishes that legal prejudice is presumed where a litigant fails to preserve evidence and thus, LuLaRoe is presumed to have suffered legal prejudice by virtue of Ms. Heinichen's failure to preserve her leggings. Thus, because prejudice exists, the Motion should be denied (absent the Court fashioning a remedy to address this prejudice as explained below).

## V.   **<u>REGARDLESS, ANY DISMISSAL SHOULD BE ON PROPER TERMS.</u>**

If the Court is inclined to grant the Motion, then Ms. Heinichen's dismissal should be on proper terms. Due to the two-hour time limit placed on LuLaRoe's deposition of Ms. Heinichen, LuLaRoe has not been able to discern the full extent of the legal prejudice caused by Ms. Heinichen's failure to preserve evidence. Nor did LuLaRoe have sufficient time to explore the full extent of the factual inaccuracies contained in Ms. Heinichen's Complaint. Just and proper terms are necessary here so that LuLaRoe is not prevented from conducting sufficient discovery to defend against the claims asserted against them. This is especially true because the information obtained in this discovery may be relevant to class certification issues. *Sherman*, 2015 WL 473270, at \*6; *see also Dysthe v. Basic Research, LLC*, 273 F.R.D. 625, 629 (C.D.Cal.2011) (granting motion to compel arbitration of plaintiff with pending motion for dismissal because the plaintiff had information "highly

likely to be relevant to class certification issues, including commonality and the typicality of the class representative's claims, even if he no longer wishes to be burdened with this litigation"). Notably, Courts have found that discovery is a proper term for voluntary dismissal. *See Sherman v Yahoo! Inc.*, 2015 WL 473270, at *7 (S.D. Cal. Feb. 5, 2015.) Indeed, "[t]he inability to conduct sufficient discovery for a defense may amount to legal prejudice." *Id.* (conditioning dismissal of plaintiff on defendant being able to depose the plaintiff).

As explained below, Ms. Heinichen's dismissal should be conditioned on all or some of the following: (a) LuLaRoe should be permitted to conduct limited discovery pertaining to Ms. Heinichen's failure to preserve her leggings (namely LuLaRoe should be afforded the opportunity of deposing the third parties that Ms. Heinichen thinks she might have left her leggings with); (b) LuLaRoe should be permitted to reopen Ms. Heinichen's deposition for the purpose of exploring additional factual inaccuracies alleged in her Complaint; and (c) Ms. Heinichen should be required to testify at trial if necessary to LuLaRoe's defense.

### A. LuLaRoe Should Be Permitted To Conduct Limited Discovery Pertaining To Ms. Heinichen's Failure To Preserve Her Leggings.

The complete story about Ms. Heinichen's failure to preserve evidence is unknown. Further, the Motion raises additional questions. Without factual support, the Motion represents that "Ms. Heinichen packed the leggings in vacuum bags and stored them at her brother's home only two hours away because she lives in a studio apartment." (Mot. at 8.) This unsupported factual representation appears to be inaccurate when compared to Ms. Heinichen's sworn deposition testimony. At deposition she testified that she *may* have stored them at *either* her brother's house or her parents' house; but ultimately, she was not certain. *See* Ms. Heinichen Depo., at p. 41:22-24 ("And so there are things like in vacuum seal bags like at my mom's house and up in like crevices of like shelves on the top of a closet, you know."); *id.* at p. 86:22-25 ("I haven't really looked for them very much, but I – it's – they very

well could have been in a vacuum-sealed bag at my brother's property.").

Thus, if the Court is inclined to grant the Motion, then it should condition Ms. Heinichen's deposition on permitting LuLaRoe to conduct discovery to determine whether the leggings can be located or otherwise determine the full extent of the legal prejudice LuLaRoe is presumed to have suffered by Ms. Heinichen's failure to preserve evidence.  That discovery should include deposing the third-party witnesses that Ms. Heinichen claims to have possibly left her leggings with.  Even if the leggings cannot be found, those third parties will certainly have information about (a) whether Ms. Heinichen in fact provided them with her leggings; or (b) the whereabouts, or loss of, Ms. Heinichen's leggings.

**B.** **LuLaRoe Should Be Permitted To Reopen Ms. Heinichen's Deposition To Fully Explore The Factual Inaccuracies Alleged In Her Complaint.**

Likewise, LuLaRoe should be permitted to elicit testimony as to the factual accuracy of each of Ms. Heinichen's factual allegations contained in her Complaint, which are highly relevant to class certification issues because Ms. Heinichen's allegations purportedly represent those of a "California Subclass."  Complaint, ¶ 98(b); *see Dysthe v. Basic Research, LLC*, 273 F.R.D. 625, 629 (C.D.Cal.2011).

Rule 11 of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading," an attorney has a duty that the "factual contentions have evidentiary support or, if so specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  FED. R. CIV. P. 11(b).  If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  *Id.* at FED. R. CIV. P. 11(c).  "Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose."  *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985

(9th Cir. 1997) (citing *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir.1996)). "Frivolous filings are 'those that are both baseless and made without a reasonable and competent inquiry.'" *Id.* (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir.1997)).

"When a 'complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually "baseless" from an objective perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before signing and filing.'" *Polaris PowerLED Techs., LLC v. VIZIO, Inc.*, 2019 WL8138437 (C.D. Cal. Aug. 29, 2019) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)).

During her two-hour deposition, LuLaRoe discovered *for the first time* at least three factual—and material—inaccuracies in the Complaint as to Ms. Heinichen's allegations. *See* Section II.D, *supra*. Because Ms. Heinichen's allegations represent those of the purported "California Subclass," LuLaRoe should be permitted to probe the factual accuracy of all of Ms. Heinichen's allegations. To do so, however, LuLaRoe would need to reopen Ms. Heinichen's deposition to allow LuLaRoe to explore each of Ms. Heinichen's factual assertions alleged in her Complaint. That testimony—like the limited testimony already obtained—will enable LuLaRoe to evaluate compliance with Rule 11 obligations.[3]

**C.     Ms. Heinichen Should Be Required To Testify At Trial If Necessary For LuLaRoe's Defense.**

The discovery phase is drawing to a close, and LuLaRoe intends on filing motions for summary judgment on certain of Plaintiffs' claims, while Plaintiffs' motion for class certification is forthcoming. These motions will have an impact on the scope of issues to be tried, if any. Should Ms. Heinichen's testimony be relevant

_____

[3]   Further, any expenses associated with the reopening of Ms. Heinichen's deposition, including travel expenses if conducted in person, should be borne by Ms. Heinichen.

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-17-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN

to the claims at issue at trial, if any, LuLaRoe intends on introducing Ms. Heinichen's testimony through her deposition testimony (provided that plaintiff agree). To the extent LuLaRoe requires testimony from Ms. Heinichen beyond her deposition testimony, however, she should be required to appear at the trial to provide that additional testimony.

This proposed condition is particularly important since Ms. Heinichen resides beyond this Court's subpoena power. Specifically, Ms. Heinichen resides in San Francisco, California, which is more than 100 miles from Riverside, California, and thus, falls outside the 100-mile limit on commanding a person to testify at trial by subpoena under Rule 45(c)(1)(A). In short, if Ms. Heinichen is dismissed—and is no longer a party—she cannot be subpoenaed to provide live testimony at trial. To be clear, it is currently unknown whether Ms. Heinichen's live testimony will be necessary and LuLaRoe will of course continue to revisit this issue in order to minimize any potential burden to Ms. Heinichen.

## VI.   CONCLUSION.

The Motion should be denied due to the legal prejudice that LuLaRoe is presumed to have suffered as a result of Ms. Heinichen's failure to preserve evidence. But if the Court grants the Motion, it should do so on just and proper terms as explained above.

Dated:  December 21, 2020

RUTAN & TUCKER, LLP
ALEJANDRO S. ANGULO
BRADLEY CHAPIN
KATHRYN D.Z. DOMIN
SAMANTHA L. GOATES

By: _____
Alejandro S. Angulo
Attorneys for Defendants
LLR, INC. and LULAROE, LLC

Rutan & Tucker, LLP
attorneys at law

2814/033910-0005
15911235.5 a12/21/20

-18-

LLR, INC. AND LULAROE, LLC'S OPPO TO
MOTION FOR VOLUNTARY DISMISSAL OF
PLAINTIFF EMMA HEINICHEN